## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WOODLAND VILLAS**                                    CIVIL ACTION
**CONDOMINIUMS**

**VERSUS**                                                    No. 23-1586

**WRIGHT NATIONAL**
**INSURANCE COMPANY**                          SECTION I

## ORDER AND REASONS

This lawsuit concerns an insurance dispute regarding flood damage caused by Hurricane Ida. Before the Court are motions for summary judgment filed by both parties. Defendant Wright National Insurance Company's ("Wright") contested motion[1] requests summary judgment because of plaintiff Woodland Villas Condominiums' ("Woodland") failure to submit timely proofs of loss. Woodland moves for partial summary judgment with respect to coverage of electrical repairs pursuant to the policy.[2]

For the reasons set forth below, Wright's motion for summary judgment is granted. Accordingly, Woodland's motion for partial summary judgment is dismissed as moot.

## I.  BACKGROUND

Wright is a Write-Your-Own ("WYO") insurance carrier participating in the National Flood Insurance Program ("NFIP").[3] The Federal Emergency Management

---

[1] R. Doc. No. 40.
[2] R. Doc. No. 43.
[3] R. Doc. No. 40-1, at 1.

Agency ("FEMA") operates the NFIP and issues policies directly or through private WYO insurers, such as Wright, which act as fiscal agents of the United States. *Clark v. Wright Nat'l Flood Ins. Co.*, 821 F. App'x 342, 344 (5th Cir. 2020) (per curiam). Each policy issued by WYO insurers is in the form of a Standard Flood Insurance Policy ("SFIP"). *Marseilles Homeowners Condo. Ass'n v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1054 (5th Cir. 2008). An SFIP is a regulation issued by FEMA. *Id.* The relevant SFIP in this case was codified at 44 C.F.R. pt. 61, app.A(3) (2020).[4]

Woodland purchased from Wright six separate SFIPs to insure six of its properties located in LaPlace, Louisiana.[5] These properties sustained flood damage as a result of Hurricane Ida on August 29, 2021, at which time the SFIPs were in effect.[6] Because of an extension granted by FEMA, the deadline to timely submit a proof of loss ("POL") in accordance with the SFIP[7] was February 25, 2022.[8]

On the day following Hurricane Ida, August 30, 2021, Woodland notified Wright of the flood damage.[9] Wright then assigned James Dwyer, an NFIP-authorized flood adjuster, to assist Woodland in preparing its flood-loss claims.[10] Between September 3 and 6, 2021, Dwyer inspected Woodland's properties.[11] Dwyer

---

[4] *Id.* at 11 n.6.
[5] *Id.*; R. Doc. No. 44., at 1.
[6] R. Doc. No. 44, at 2.
[7] For ease of reading, the Court henceforth refers to the six SFIPs as "the SFIP" since their terms are identical.
[8] R. Doc. No. 40-6, ¶ 20.
[9] R. Doc. No. 44-1, ¶ 8.
[10] *Id.* ¶ 9.
[11] *Id.* ¶ 10.

then prepared estimates for Wright.[12] He also prepared POLs[13] reflecting his estimates, but they were not signed by Woodland.[14] On November 3 and 4, 2021, Wright paid to Woodland the amounts calculated by Dwyer.[15]

On February 18, 2022, Kelly Kopecky, the property manager for Woodland, emailed Dwyer what Woodland characterizes as a supplemental POL.[16] This document consisted of a report by Robert Bodet, a registered architect, whom Woodland hired to assist in the rebuild of the properties.[17] The Bodet report calculated the amount still owed by Wright to be $880,943.17.[18] Over the next several months, Kopecky, Bodet, Dwyer, and other employees of Wright exchanged emails and telephone calls regarding the Bodet report.[19] Ultimately, on May 11, 2022, Wright sent Woodland denial letters regarding the amounts in the Bodet report.[20] The parties continued to exchange communications thereafter.[21] On December 12, 2022, Wright sent Woodland supplemental denial letters.[22]

In the period between the sending of the initial and supplemental denial letters, Dwyer prepared supplemental POLs,[23] which increased the firewall claim for

---

[12] R. Doc. No. 40-13, ¶ 9.

[13] R. Doc. No. 40-4.

[14] R. Doc. No. 40-13, ¶ 10.

[15] R. Doc. No. 44-1, ¶ 11.

[16] *Id.* ¶ 12.

[17] R. Doc. No. 44-2.

[18] *Id.*

[19] R. Doc. No. 44-1, ¶¶ 15–25.

[20] *Id.* ¶ 26.

[21] *Id.* ¶¶ 27–43.

[22] *Id.* ¶ 44.

[23] R. Doc. No. 40-10.

each building by $9,900.[24] On September 26, 2022, Kopecky signed these supplemental POLs ("9/26 POLs").[25] Because the deadline for submitting POLs had already lapsed on February 25, 2022, Wright applied for limited waivers of the deadline from FEMA.[26] Wright obtained such waivers[27] on April 12, 2023.[28] Very soon afterward, Wright made supplemental payments to Woodland in accordance with the 9/26 POLs.[29]

On May 12, 2023, Woodland filed its complaint[30] against Wright, which alleged breach of contract for failure to pay the amounts as calculated in the Bodet report.[31] Thereafter, FEMA notified Woodland of its dismissal of Woodland's earlier filed appeal of Wright's denial of the Bodet report.[32] Wright now moves this Court for summary judgment on the basis of Wright's failure to timely submit a POL.

## II.  STANDARD OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022) (quoting *Anderson*

---

[24] R. Doc. No. 44-1, ¶ 36.
[25] *Id.* ¶ 38.
[26] R. Doc. No. 40-6, ¶ 16.
[27] R. Doc. No. 40-8.
[28] R. Doc. No. 40-6, ¶ 16.
[29] R. Doc. No. 44-1, ¶ 52.
[30] R. Doc. No. 1.
[31] *Id.* ¶ 32.
[32] R. Doc. No. 44-1, ¶ 54.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *JW Dev., LLC v. Indep. Specialty Ins. Co.*, No. 22-cv-390, 2022 WL 3139133, at *1 (E.D. La. Aug. 5, 2022) (Africk, J.) (quoting *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party meets this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp.*, 477 U.S. at 323. When the movant does not bear the burden of persuasion at trial, the movant need only demonstrate the absence of evidence supporting the nonmovant's case and so "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original); *see also Celotex Corp.*, 477 U.S. at 322–23. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

When the movant satisfies its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* at 1075; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, this rule applies "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Courts will "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Accordingly, the nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (citations omitted).

In ruling on a motion for summary judgment, courts do not usurp or "denigrate" the role of the jury: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## III. ANALYSIS

The provisions of the SFIP "must be strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998). Strict compliance is required because "SFIP claims are paid from the federal treasury." *Id.* at 953. "Requiring [litigants] to turn square corners when dealing with the Treasury . . . expresses the duty of all

6

courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 955 (internal quotations and citation omitted). Further, "no provision of the [SFIP] can be altered, varied, or waived without the express written consent of the Federal Insurance Administrator." *Id.* at 953.

Pursuant to the SFIP, "an insured cannot file a lawsuit seeking further federal benefits under the policy unless the insured can show prior compliance with all policy requirements." *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1055 (5th Cir. 2008); *see also* 44 C.F.R. pt. 61, app.A(3), art. VIII(R) (2020) ("You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy."). The SFIP requires the insured to sign and "furnish" a timely and "sworn to" POL in case of loss. *See* 44 C.F.R. pt. 61, app.A(3), art. VIII(J)(4). Consequently, a fully compliant POL is a "condition precedent to bringing the instant litigation." *See Marseilles*, 542 F.3d at 1055.

Wright contends that Woodland is barred from bringing the instant lawsuit pursuant to the SFIP because Woodland did not submit a compliant POL and therefore did not comply with all policy requirements.[33] Wright asserts that neither the Bodet report nor the 9/26 POLs constitute a compliant POL.[34] The Court agrees. Further, the Court concludes that Woodland has not identified a valid legal reason why its failure to comply is excused.

---

[33] R. Doc. No. 40-1, at 3.
[34] *Id.* at 15, 22.

### a. Woodland Did Not File a Compliant POL.

Wright asserts that the documents that Woodland sent to Wright—the Bodet report and the 9/26 POLs—are insufficient to satisfy the SFIP's POL requirement. The latter are clearly deficient as untimely.

Generally, a POL must be submitted within 60 days of the date of loss pursuant to the SFIP. *See* 44 C.F.R. pt. 61, app.A(3), art. VIII(J)(4). However, FEMA had extended the deadline by 180 days, an action which moved the deadline to February 25, 2022.[35] The 9/26 POLs were not signed until September 26, 2022—several months after the extended deadline had expired.[36] Thus, the 9/26 POLs are untimely and therefore noncompliant with the SFIP.

The Bodet report fares no better. Pursuant to the SFIP, the POL must be "signed and sworn to" by the insured. 44 C.F.R. pt. 61, app.A(3), art. VIII(J)(4). Wright contends the Bodet report is noncompliant in two respects. First, it is signed by Bodet, an architect hired by the insured, rather than the insured.[37] Second, the Bodet report is not "sworn to."[38]

---

[35] R. Doc. No. 40-6, ¶ 20. Wright asserts that February 25, 2022, was the deadline to submit POLs under the SFIP in this case. Woodland does not address or dispute this date in its submissions. Pursuant to Federal Rule of Civil Procedure 56(e), the Court considers February 25, 2022, to be the relevant deadline for the purposes of ruling on this motion.

[36] R. Doc. No. 44-1, ¶ 38. The Court notes that Wright contends it did not receive the 9/26 POLs until April 10, 2023. R. Doc. No. 40-1, at 6. Since both the date on which the 9/26 POLs were signed and the date on which they were allegedly received are both after the extended deadline, the Court does not need to determine whether the 9/26 POLs were not received until April 10, 2023, or which date serves as the date on which the POLs were "furnished" for the purposes of article VII, section J of the SFIP.

[37] R. Doc. No. 40-1, at 15.

[38] *Id.* at 17.

The Court concludes that the Bodet report is not "sworn to" within the meaning of the SFIP. The Fifth Circuit has explained that, "strictly construed," the "sworn to" requirement is satisfied through "either notarization or a declaration substantially similar to 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" *Clark v. Wright Nat'l Flood Ins. Co.*, 821 F. App'x 342, 346 (5th Cir. 2020) (quoting 28 U.S.C. § 1746). The Bodet report is not notarized. Nor does it contain any declaration—let alone one substantially similar to the archetype provided by the Fifth Circuit. Consequently, the Bodet report is not "sworn to" within the meaning of the SFIP.

Woodland's rejoinders come to naught. It first points out that, under the FEMA manual, the POL need not be notarized.[39] However, this point does not remedy the fact that the Bodet report also lacks a sufficient declaration. Second, Woodland contends that the report is "sworn to" because Bodet affixed his architect seal to the report.[40] Woodland cites Louisiana Administrative Code ("LAC") 46:I.1305(A), which provides that "[a]n architect shall affix his or her seal or stamp to all contract drawings and specifications requiring the services of an architect which were prepared by the architect or under the architect's responsible supervision." Woodland seems to assert that Bodet's seal functions as a declaration because, in light of this provision, it is an "attestation," and, "[a]s such, there is a genuine issue of material

---

[39] R. Doc. No. 44, at 15.
[40] *Id.*

fact as to whether such a supplemental proof of loss was 'sworn to' as required by the SFIP."[41]

Woodland's argument is wanting. The meaning of "sworn to" in the SFIP and the legal significance of Bodet's seal are issues the Court must resolve. The Court must decide whether Bodet's seal carries the same legal significance as being "sworn to." Further, it is unclear—and Woodland does not cite any authority to provide clarification—whether the significance ascribed to Bodet's seal under Louisiana law determines the meaning of the seal for the purposes of federal common law, which governs. *See Lowery v. Fid. Nat. Prop. & Cas. Ins. Co.*, 805 F.3d 204, 207 (5th Cir. 2015) ("Federal common law, not state law, governs the interpretation of the SFIP.").

Putting aside the latter question, the Court nonetheless concludes that the seal does not satisfy the legal requirement of being "sworn to." The seal is not a notarization. Nor is it the appropriate declaration or one substantially similar. The appropriate declaration required by the SFIP functions not only to certify the factual accuracy of the POL but also to expose the declarant to the penalty of perjury. *See Clark*, 821 F. App'x at 346. A declaration which only attests factual accuracy is not substantially similar. *See id.* at 345 (concluding that a POL which contained the statement "I hereby declare and attest that the information contained in this letter is true and correct to the best of my knowledge" was not "sworn to" within the meaning of the SFIP). Bodet's seal performs neither function. Rather, his seal merely serves as a means of attribution. *See* LAC 46:I.1305(B) ("An architect shall clearly

---

[41] *Id.*

identify the specification sections prepared by that architect or under that architect's responsible supervision and distinguish such sections from those prepared by consulting engineers.").

In sum, the Court holds that neither the 9/26 POLs nor the Bodet report are compliant POLs for the purposes of the SFIP. Since the Court concludes that the Bodet report is not a compliant POL because it is not "sworn to," the Court does not address whether it is also deficient because it is not signed by the insured.[42]

### b. Woodland's Estoppel and Waiver Arguments Are Meritless.

Woodland's primary arguments in its response are difficult to discern, as the first section of its analysis does not cite a single case or statute in its four pages.[43] The Court understands Woodland to make two separate arguments. First, any noncompliance because of defects in the POLs was waived when Wright obtained limited waivers from FEMA with respect to the 9/26 POLs.[44] Second, though it does not use the exact language of "estoppel," Woodlands essentially contends Wright is estopped from raising failure to strictly comply with the SFIP because of representations made by employees of Wright.[45] Neither argument is meritorious.

---

[42] Pursuant to article II, section A of the SFIP, "you," when used in the SFIP, "refer[s] to the insured(s) shown on the Declarations Page." Thus, a POL "signed and sworn to by you" pursuant to article VIII, section J(4) of the SFIP must be signed by the insured. Accordingly, district courts within the Fifth Circuit have routinely held that a POL not signed by the insured but by the insured's attorney is an inadequate POL. *See Cothren v. Am. Strategic Ins. Corp.*, 572 F. Supp. 3d 238, 247 (M.D. La. 2021) (collecting cases).

[43] R. Doc. No. 44, at 9–12.

[44] *Id.* at 9–10.

[45] *Id.* at 11–12.

Woodland's waiver argument fatally ignores the expressly limited nature of the waivers obtained by Wright. Pursuant to the SFIP, timely submission of a compliant POL is a condition precedent not only to bringing a lawsuit but also to recovery. *Marseilles*, 542 F.3d at 1056 ("[A]n insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." (quotations and citation omitted)). Wright could not pay the amounts in the untimely 9/26 POLs without first obtaining waivers from FEMA. If Wright had paid despite the fact that Woodland did not satisfy a condition precedent to its recovery, Wright would have effectively waived a term of the SFIP in violation of federal law. *See Gowland*, 143 F.3d at 954 ("[N]o provision of the [SFIP] can be altered, varied, or waived without the express written consent of the Federal Insurance Administrator.").

The limited waivers obtained by Wright functioned to waive the timeliness requirement only with respect to Woodland's right to recover the amounts listed in the 9/26 POLs and nothing more. Each of the limited waivers provides that it "only applies to this single request and to the [POL] filed for the date and in the amount noted in this request."[46] Crucially, each then states that "[t]his limited waiver affects no other term, condition, limitation or requirement of the [SFIP] and has no other effect."[47] The limitation in article VIII, section R of the SFIP was thus not waived. This provision of the SFIP remains in effect and bars the instant lawsuit.

---

[46] R. Doc. No. 40-8.
[47] *Id.*

Further, Woodland's waiver argument fails because the waivers were explicitly limited to the "amount noted in th[e] request."[48] When waivers are limited to specific amounts, lawsuits to recover in excess of those amounts are barred. *See, e.g.*, *Villemarette v. Fed. Emergency Mgmt. Agency*, No. 13-cv-5400, 2014 WL 4066786, at *4 (E.D. La. Aug. 15, 2014) (Vance, J.) ("Thus, there is no question of material fact; FEMA expressly limited the waiver to the amount paid, and plaintiffs did not file a timely POL for the additional amounts claimed in this suit.").

Finally, Woodland's estoppel argument fails as a matter of law. In both the fact and argument sections of its response, Woodland repeatedly emphasizes communications it had with Dwyer or William Nemeth, an employee of Wright, that indicated that Woodland was in compliance with the SFIP.[49] Most notably, when asked in an email by Kopecky whether signing the 9/26 POLs would affect Woodland's ability to bring suit, Nemeth responded "no, it will not."[50] Woodland also points out that on the waiver application, Wright responded "no" to the question "did the policyholder report the claim late . . . ?"[51]

Even if the Court were to find that these comments are supported by the record and were to interpret them as Woodland does, these comments cannot, under federal law, estop Wright from raising noncompliance with the SFIP. Since SFIP claims are paid directly from the public treasury, Woodland is essentially asserting estoppel

---

[48] *Id.*
[49] R. Doc. No. 44, at 3–6, 11–12.
[50] *Id.* at 11.
[51] *Id.* at 12.

against the government, and asserting estoppel against the government is disallowed. *See Collins v. Nat'l Flood Ins. Program*, 394 F. App'x 177, 179–80 (5th Cir. 2010) ("[B]ecause any payments on Collins's claim would come from the public treasury, Collins has essentially asserted an estoppel claim against the government, and we have never upheld such claims in the context of the NFIP."); *Clark*, 821 F. App'x at 347 ("Neither this court nor the Supreme Court has upheld an estoppel claim resulting in the payment of money out of the United States treasury."); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005) ("Here, as in *Gowland*, we find the doctrine of equitable estoppel inapplicable. The Supreme Court has made clear that judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." (internal quotations and citation omitted)); *Gowland*, 143 F.3d at 955 ("When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution.").

Although this rule may seem callous, "[w]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Wright*, 415 F.3d at 388. Since the record demonstrates Woodland did not fully comply with the SFIP, it has not satisfied its obligations for receiving federal funds. Accordingly, pursuant to article VIII, section R of the SFIP, Woodland is barred from bringing the instant suit.

## IV. CONCLUSION

For the foregoing reasons,

14

**IT IS ORDERED** that Wright's motion for summary judgment is **GRANTED**. Accordingly, Woodland's breach-of-contract claims against Wright are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Woodland's motion for partial summary judgment is **DISMISSED AS MOOT**.

New Orleans, Louisiana, October 9, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**